UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                    Case No. 23-42939-tjt

**Adam Royce Bignell**                                    Chapter 11 – Subchapter V

      Debtor.                                 Hon. Thomas J. Tucker
_____/

# UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION OF DEBTOR'S CHAPTER 11, SUBCHAPTER V PLAN OF REORGANIZATION

Andrew R. Vara, United States Trustee, for his Objection to Confirmation of Debtor's Plan of Reorganization (the "Plan"), states:

**Preliminary Statement**

The Plan does not meet the requirements for confirmation under 11 U.S.C. §1191. Primarily, the Plan does not comply with the "feasibility" requirement of 11 U.S.C. § 1129(a)(11) because the projections in the Plan are not supported by the Debtor's history or post-petition performance. The Debtor has provided no information to this Court and the creditors which suggests that the Debtor will be able to satisfy the terms of the Plan.

Confirmation of the Plan should also be denied because the Debtor does not provide sufficient detail about the disposition of certain assets, including his crypto currency account, and does not account for potential tax liabilities.

## Background

1. The Debtor filed his Chapter 11 Subchapter V petition on March 30, 2023.

2. Deborah Fish was appointed the Chapter 11 Subchapter V trustee (the "Subchapter V Trustee"[1]).

3. In connection with his bankruptcy petition, the Debtor filed Schedules and a Statement of Financial Affairs (Docket #28) ("Schedules" and "SOFA").

4. Generally, the Debtor's assets include his family home, a rental home, an RV, a crypto currency account, cash, and vehicles. These assets are subject to liens of various creditors.

5. Prior to filing this case, the Debtor was engaged in business through a company he founded in 2011. Sahb Energy, LLC ("Sahb") provided site services to telecom providers (cell tower maintenance, service and upgrades.)

6. Sahb's largest customer terminated its contract in 2022. Sahb turned to merchant cash advances to stay afloat with the Debtor providing guarantees to these creditors. In early 2023 Sahb ceased doing business.

7. Additionally, the Debtor guaranteed a $2 million small business loan to Sahb.

---

[1] All capitalized terms in this objection shall have the meaning given herein, or as otherwise defined by the Debtor's Plan of Reorganization.

8. The Debtor also engaged in crypto currency transactions while running Sahb, which he claims grew to as much as $11 million, but the Debtor stated he lost about that much with the crash of the crypto currency markets in late 2022.

9. According to Schedule E/F, the Debtor has several unsecured creditors with total claims exceeding $2.563 million. Many of these debts are guaranties of Sahb's debts.

10. The Debtor has been employed since the petition date, earning approximately $8,000 per month. In addition to the income from his job, the Debtor and his non-filing spouse rent out a home they own in Beverly Hills, Michigan, and they rent out an RV.

11. The Debtor timely filed his Plan of Reorganization (the "Plan") on June 28, 2023 (Docket # 48).

12. The Plan generally provides for eight classes of claims. The secured creditors are classified individually. Those with liens on the Debtor's residence, rental property, RV and Honda Odyssey will retain their liens paid according to the respective contracts. Franklin Capital Management, LLC, owed $1.38 million, and which has a lien on the Debtor's crypto account, is to be paid the value of that account – about $115,000 over 60 months. The balance of Franklin Capital Management's claim is treated as a general unsecured creditor. Tax claims are to be paid over 60 months at 3% interest. General unsecured claims are to be paid a pro rata portion of the sum of $2,578,878.30 over 60 months. This class includes

the claim of the Small Business Administration of over $2 million for the Disaster Loan which the Debtor guaranteed.

13. The Plan provides that distributions under the confirmed Plan will be made by the Debtor.

**Requirements for Confirmation in Subchapter V**

14. Section 1191(a) and (b) of the Bankruptcy Code provide alternate means by which a plan can be confirmed.

15. Subsection (a) of § 1191 provides that the court "shall confirm a plan under this subchapter *only if all of the requirements of section 1129(a)*, other than paragraph (15) of that section, *of this title are met*." (Emphasis added.) Confirmation under § 1191(a) is commonly referred to as "consensual."

16. Under subsection 1191(b), the court shall confirm a plan under subchapter V if all the applicable sections of § 1129(a) are met, except subsections (8), (10), and (15), as long as the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

17. According to § 1191(c)(2), a plan is "fair and equitable" if it provides that all the projected disposable income of the debtor to be received in the three-year period (but no more than a five-year period) will be applied to make payments

under the plan. Or, the property to be distributed under the plan has a value of not less than such disposable income.

18. In addition, the "fair and equitable" test of § 1191(b) includes a special feasibility component. Specifically, under § 1191(c)(3)(A)(i), "[T]he debtor will be able to make all payments under the plan; or (ii) there is a reasonable likelihood that the debtor will be able to make all payments under the plan; and (B) the plan provides appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event the payments are not made."

19. The feasibility requirement of § 1129(a)(11) also applies in subchapter V cases. Specifically, that section provides that confirmation is not likely to be followed by liquidation or the need for further reorganization proceedings, unless proposed in the plan. 11 U.S.C. § 1129(a)(11.)

### The Debtor's Plan Cannot Be Confirmed Because It Is Not Feasible

20. Feasibility is routinely established by a debtor's projections over the life of a plan. It may be dependent upon the sale of property during the plan, or by increased revenues post-confirmation. These factors in turn may be established by the debtor's historical performance while in chapter 11, by the testimony of an expert as to the reasonableness of the projections, or, in an individual case, by the

testimony of a spouse who will be contributing to the financial performance of the debtor. *In re Hyde,* 2022 WL 2015538 at *10 (Bankr. E.D. La. 2022).

21. The Court must make an independent determination as to each requirement for confirmation, including feasibility. *In re Lapeer Aviation*, 2022 WL 7204871, at *3 (Bankr. E.D. Mich. 2022).

22. It is the Debtor's burden to prove each element required for confirmation by a preponderance of the evidence. *Id.* at *3 (citation omitted.)

> "It is [the Debtor's] burden, as the Plan proponent, to present concrete evidence to establish that she has sufficient cash flow to maintain her ongoing personal expenses while funding all Plan payments. *See In re Pizza of Haw., Inc.,* 761 F.2d at 1382; 7 *Collier on Bankruptcy* ¶ 1129.02 (16th ed. 2023). And while feasibility under § 1129(a) presents a relatively low threshold, it still depends on adequate evidence. *Legal Serv. Bureau, Inc. v. Orange Cnty. Bail Bonds, Inc., (In re Orange Cnty. Bail Bonds, Inc.),* 638 B.R. 137, 148 (9th Cir. BAP 2022) (citing *In re Brotby*, 303 B.R. at 191). To this end, "[f]actual support must be shown for the Debtor's projections." *In re Hobble-Diamond Cattle Co.*, 89 B.R. 856, 858 (Bankr. D. Mont. 1988). "The use of the word 'likely' in Section 1129(a)(11) requires the Court to assess whether the plan offers a reasonable '*probability of success, rather than a mere possibility*.' " (emphasis added) *In re Sanam Conyers Lodging, LLC*, 619 B.R. 784, 789 (Bankr. N.D. Ga. 2020) (quoting *In re Aspen Vill. at Lost Mountain Memory Care, LLC*, 609 B.R. 536, 543 (Bankr. N.D. Ga. 2019)). Thus, "[t]he mere fact that the bare numbers in the income and expense projections provided in the plan demonstrate an apparent surplus to adequately fund the plan is not enough to meet the burden on feasibility." *In re Kowalzyk*, 2006 WL 3032145, at *5 (Bankr. D. Minn. 2006)."

*In re Curiel*, 2023 WL 4146017, at *9 (9th Cir. BAP 2023).

### *The Debtor's Projections Are Unsupported by the Debtor's Post Petition Reporting.*

23. The Debtor has filed only one monthly operating report ("MOR") (Docket No. 40), on June 16, 2023 - two and a half months after the commencement of the case.

24. The single MOR is meant to disclose the Debtor's financial activity from the date of filing through April 30, 2023. (the "April MOR.")

25. The April MOR is woefully deficient.

    a. First, the report was submitted on a form which has embedded information and is not applicable in an individual case. The report shows total April 2023 household income of $5,671. There was a shortfall of over $3000, with no explanation as to how the shortfall was covered. The report showed cash on hand at the start date of the report, but no explanation of the source of those funds.

    b. The report did not show rental income from the residence on Westlady or from the RV for April, and did not contain an explanation for the absence of that income. The MOR also did not show payments to the secured creditors on either the Westlady house or the RV. There is no indication of any adequate protection payments being made to any creditor.

    c. The April MOR contained a payment of $550 on account of a Ford F350. That vehicle is not listed in the Debtor's schedules, nor was the entity to whom the payment was made indicated in the report.

    d. The April MOR included an attachment of household expenses with no dates, no details, and the expenses bear no resemblance to Schedule J.

    e. The report also includes an attachment of April and May transactions from an unidentified bank account (except for what appears to be a full account number.) The account showed overdraft fees and a "foreign transaction" fee.

    f. Page 2 of the Independent Bank statement is missing from the April MOR. The documents it does include are confusing.

    g. There is no information about the Debtor's solar business.

  26. The United States Trustee sought additional information and explanations about the report on June 21, 2023 by email to Debtor's counsel. The proffered clarifications were unsatisfactory.

  27. The Debtor filed an Amended April MOR on July 21, 2023. Some of the items have been clarified, but the Debtor stated in the Amended April MOR that his father-in-law is gifting the $5100 per month payments on the primary residence to the Debtor. The Debtor is therefore still experiencing a significant shortfall in income to support the plan.

  28. The Debtor has not filed any additional MORs, including reports past due for the months of May and June. This case has been pending for 12 weeks without any accurate disclosures of the Debtor's post-petition financial activity, aside from a $3,000 shortfall.

23-42939-tjt  Doc 52  Filed 07/23/23  Entered 07/23/23 13:21:24  Page 8 of 12

*The Debtor's Projections are Not Supported by Evidence of Future Income.*

29. The Debtor's Plan performance depends on the Debtor's ability to make income in at least the amount of $18,000 per month from his new business, Soltek!. Soltek! is going to be in the business of selling and installing solar panels. It is the Debtor's intention to use income both from Soltek! and from real property and RV rentals to fund the plan.

30. The Debtor testified at the Section 341 First Meeting of Creditors about his plans to grow a solar business by partnering with various larger solar providers. The Debtor stated that he thought he would have his first sales or installation commission in May. As of the date of this Objection, no income from this enterprise is evident.

31. The Amended April MOR states that Soltek! has earned a partial commission for June.

32. The projections attached to the Plan (Docket No. 48, Exhibit 2 (or Exhibit B per the terminology of the Plan) suggest that the Debtor is relying upon more than 50% of projected Soltek! revenue for funding the Plan payments.

33. As of July 18, 2023, *three weeks into the voting period* on the Plan, substantive information on Soltek! is still inadequate. No information about Soltek!'s revenue has been provided to the United States Trustee, creditors, or the Court, except in the Amended April MOR which states that Soltek! earned a partial commission in June. The amount is unknown.

34. The Plan represents only a possibility, not a probability, of feasibility.

*The Debtor's Projections are Unsupported by Historical Financial Data*

35. To gauge the likelihood of the Plan's success the Court and the parties have only the Debtor's history with his previous company, Sahb, which is no longer operating, and the April MOR.

36. There is no financial data – historical or otherwise – about the operations and income of Soltek!.

37. The Debtor states in the Plan that there are no avoidance actions to pursue, but what accounts the Debtor looked at to make that judgment is unknown.

### Other Deficiencies

38. The Debtor owns a crypto currency account which he valued at $115,000 at the time the case was filed. The account serves as collateral for one of the creditors.

39. The Debtor proposed to pay that creditor the amount $115,000 over five years on account of its secured claim, with the balance of over a million dollars treated as an unsecured claim.

40. The Debtor does not explain in the Plan what he will do with the crypto currency account otherwise over the five-year plan term, or whether the Debtor has the secured creditor's consent to use those funds in any manner.

41. Additionally, the Debtor has post-petition tax returns for calendar year 2022 due in October 2023. The Plan is devoid of any information as to how

potential tax liability for 2022 might impact the Debtor's ability to make payments under the Plan.

## Other Administrative Objections

42. It is unclear at this time whether the Plan will be confirmed under Section 1191(a) or (b).

43. If the Plan is confirmed under subsection (a) of §1191, the Order Confirming Plan should include the following language:

*The plan is confirmed pursuant to 11 U.S.C. § 1191(a).*

*In accordance with 11 U.S.C. § 1183(c)(1), the Subchapter V Trustee's services shall automatically terminate upon the plan's substantial consummation.*

*No later than fourteen (14) days after the plan's substantial consummation, the Debtor shall (i) file the notice required under section 1183(c)(2).*

44. If the Plan is confirmed under subsection (b) of §1191, the Order Confirming Plan should include the following language:

*The plan is confirmed pursuant to 11 U.S.C. § 1191(b).*

*The identity of whoever will be making the distributions.*

*The length and frequency of payments.*

*A requirement that the debtor or disbursing agent file quarterly periodic reports detailing disbursements made pursuant to plan payments no later than the 20th day after the end of each quarter.*

WHEREFORE, the United States Trustee respectfully requests that the Court deny confirmation of the Debtor's Plan of Reorganization.

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
Regions 3 and 9

By   /s/ Leslie K. Berg
Leslie K. Berg
Trial Attorney
Office of the U.S. Trustee
211 West Fort St - Suite 700
Detroit, Michigan 48226
(313) 226-7999
Leslie.K.Berg@usdoj.gov

Dated: July 23, 2023